IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS YERANSIAN,

Plaintiff,

v.

MARKEL GROUP, INC.,

Defendant.

CIVIL ACTION
NO. 25-192

**OPINION**

**Slomsky, J.**                                                                 **August 4, 2025**

**TABLE OF CONTENTS**

I.      **INTRODUCTION** ................................................................................................... 3

II.     **BACKGROUND** ..................................................................................................... 4

    A.   Factual Background ............................................................................................. 4

       1.   Merger and CVR Agreement ......................................................................... 4

       2.   2015 Settlement ............................................................................................. 6

       3.   2016 Case ....................................................................................................... 7

       4.   2018 Case ....................................................................................................... 9

       5.   2020 Case ..................................................................................................... 10

       6.   Experts' CVR Valuation Report ................................................................. 10

       7.   Consolidation and Resolution of Prior Consolidated Cases ...................... 11

       8.   Confirmation of Arbitration Award Order ................................................. 11

       9.   Demand for Attorney's Fees ....................................................................... 12

    B.   Procedural Background ...................................................................................... 12

III.    **STANDARD OF REVIEW** ................................................................................. 14

**IV.    ANALYSIS**................................................................................................................ 15

    A.    Plaintiff's Request for Fees Is Waived Under Federal Rule of Civil
          Procedure 54(d)(2) ............................................................................................. 16

        1.    Holders' Request For Fees and Expenses Should Have Been Brought
               Under Rule 54 ............................................................................................... 17

        2.    Holders Waived Their Right to the Requested Fees and Expenses by Failing
               to Timely Move Under Rule 54 ................................................................. 21

    B.    Res Judicata Bars Holders' Claim ............................................................... 24

        1.    Elements One and Two of Res Judicata are Met ...................................... 25

        2.    Element Three of Res Judicata is Met ...................................................... 26

**V.    CONCLUSION** ......................................................................................................... 27

## I.    INTRODUCTION

Litigation rewards those who act, not those who wait.  When a final judgment is entered, Federal Rule of Civil Procedure 54(d)(2) requires parties seeking attorney's fees to act promptly or risk waiving their right to act.  In the instant case, Plaintiff Thomas Yeransian ("Plaintiff") waited.

In 2010, Defendant Markel Group, Inc. ("Defendant") purchased Aspen Holdings LLC ("Aspen") and issued Aspen's shareholders (the "Holders") contingent value rights pursuant to a Contingent Value Rights Agreement ("CVR Agreement").  (Doc. No. 1 at 3-4.)  In 2016, when a dispute arose between Holders and Defendant under the CVR Agreement, Holders, acting through Plaintiff in his capacity as Holder Representative, filed a Complaint against Defendant.  As the dispute continued, Holders filed two more Complaints in 2018 and 2020, respectively, which were eventually consolidated into the 2016 case and ultimately dismissed in June 2023 when the court granted Defendant's Motion to Dismiss or for Summary Judgment.  Over a year and a half later, in February 2025, Holders filed the instant case, requesting that Defendant reimburse them for the fees and expenses they incurred in the 2016, 2018, and 2020 cases.  In response, Defendant moves to dismiss the Complaint, arguing that Holders' claim is barred by <u>res judicata</u>, claim splitting and that they waived the right to seek attorney's fees by failing to file a timely motion for such fees under Federal Rule of Civil Procedure 54.  (<u>See</u> Doc. No. 12.)  The Court agrees with Defendant's arguments, but need not reach the claim splitting argument because the other two arguments are meritorious.

Rule 54 required Holders to file a motion for fees and expenses within 14 days of entry of judgment in the prior consolidated cases.  And <u>res judicata</u> precludes Holders from using a new case, such as this one, as a vehicle to recover the fees they knowingly chose not to pursue in the prior actions.  Accordingly, under Rule 54(d) and the well-established principles of <u>res judicata</u>,

3

Holders' failure to pursue a timely fee claim in the previous action bars them from seeking those fees now.  For these reasons, and more that follow, Defendant's Motion to Dismiss the Complaint (Doc. No. 12) will be granted.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Merger and CVR Agreement

On October 15, 2010, Defendant acquired ownership of Aspen Holdings, LLC ("Aspen") pursuant to what is referred to as a Contingent Value Rights Agreement (the "CVR Agreement"). (Doc. No. 1 at ¶ 11.)  Defendant and Aspen initially agreed on a purchase price of $183 million but, after agreeing on this price, Defendant requested permission to conduct additional due diligence.  (Id.)  After the additional due diligence, the parties agreed that the $183 million purchase price would be paid as follows:  "$135.7 million in cash at closing and the remainder of the original $183 million purchase price paid through 'Contingent Value Rights' ("CVRs")" held by Aspen's shareholders (the "Holders").[1]  (Id.)  Pursuant to the CVR Agreement, Holders would receive additional consideration for the acquisition of Aspen eight years after the closing of the merger, with an option for Holders to elect early payment of this additional consideration five years after closing.  (Id.)

The additional consideration paid to Holders eight years after the merger's closing (or, if elected, five years after closing) would be the value of the CVRs as calculated by Defendant in

---

[1]    A Contingent Value Right is:

> A right given to stockholders of a public target company in a merger transaction that entitles them to additional consideration after the closing, either in the form of cash or stock (or a combination of both), when certain payment triggers are met.

Westlaw, Contingent Value Right, Glossary, (Westlaw Glossary Resource ID No. 2-501-1177) (last visited July 2, 2025).

accordance with Section 3.2(a) of the CVR Agreement.  (Id. at ¶ 16.)  Section 3.2(a) of the CVR Agreement provided for the final value of the CVRs – the "Adjusted Principal Amount" – to be calculated based on the "Initial Principal Amount" of $47.3 million, subject to certain upward or downward adjustments.  (Doc. No. 1-1 at 14.)  Under this Section, preliminary calculations of those adjustments were to be reported to Holders each year through an "adjustment statement." (Id.)  Ultimately, Defendant would calculate and pay the final CVR value to Holders based on a valuation performed at the end of the seventh year.  (Id.)  At both the fifth year (if Holders elected to be prepaid at that time) and seventh year, if Holders disagreed with Defendant's calculation of the CVRs' value, Section 3.2(d) of the CVR Agreement provided for independent actuarial and claims experts to calculate the CVRs' final value.  (Id.)  Section 3.2(d) details that if Holders' and Defendant cannot resolve a disagreement within 15 days, the dispute will be referred to an Independent Actuary and an Independent Claims Expert.  (Doc. No. 1-1 at 14-15.)  The Actuary's determination of the Adjusted Principal Amount would be final and binding, and Defendant would pay for the Actuary's fees.  (Id.)

Should a dispute arise between Holders and Defendant regarding enforcement of the CVR Agreement, Section 8.6 of the CVR Agreement, titled Expenses of the Holder Representative, specifies which party is responsible for the fees arising out of such a dispute.  (Doc. No. 1-1 at 25.) Specifically, Section 8.6(a) states as follows:

> Except as set forth in Section 8.6(b) below, any administrative or other expenses incurred by the Holder Representative in connection with performing its duties under this Agreement and the Merger Agreement, including, without limitation, enforcement of the provisions contained herein and therein, shall be borne by the Holders jointly and severally.  In connection with the performance of its obligations hereunder, the Holder Representative shall have the right at any time and from time to time to select and engage attorneys, accountants, investment bankers, advisors and consultants and obtain such other professional and expert assistance, and maintain such records, in each case as reasonably necessary or desirable, and incur other reasonable out-of-pocket expenses.  The Holder Representative Expenses

5

may be paid to the Holder Representative out of the Holder Representative Fund and/or set-off against the amounts otherwise payable to the Holders hereunder.

(Id.) Section 8.6(b) follows, providing:

> In the event that a court of competent jurisdiction makes a final determination following expiration of all applicable appeals periods related thereto in favor of the Holders in any dispute related to the enforcement of the provisions contained in this Agreement or the Merger Agreement, Parent shall reimburse the Holder Representative for all documented fees and expenses that were reasonably incurred by the Holder Representative in connection with such dispute. Any such fees and expenses incurred by the Holder Representative shall be paid by Parent in immediately available funds to an account designated by the Holder Representative within ten Business Days of request therefor by the Holder Representative.

(Id. at 26.) In sum, Section 8.6 requires Holders to bear their own costs incurred from performing their duties under the CVR Agreement, unless a court of competent jurisdiction makes a final determination in favor of Holders, in which case Defendant must reimburse Holders for the fees they incurred in enforcing the provisions of the Agreement. (Id. at 25-26.)

### 2. 2015 Settlement

For the first five years following the execution of the CVR Agreement, the parties had no disputes regarding enforcement of any provision. But in 2015, Defendant's annual adjustment statement informed Holders that the value of the CVRs at year-end 2014 was a negative $7 million, specifically, minus $7,009,549. Yeransian v. Markel Corporation, Case No. 1:16-cv-00808 [hereinafter "2016 Case Docket"], Doc. No. 97 at 8.[2] Holders believed that value was wrong and gave notice to Defendant that Holders were initiating the expert valuation/arbitration procedure

---

[2] In Pension Benefit Guar Corp. v. White Consol. Indus., Inc., the court held that "to decide a motion to dismiss, courts generally consider only the allegations in the complaint, exhibits attached to the complaint [,] and matters of public record. 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, a court may also consider on a motion to dismiss documents integral to a complaint, even if not appended to it by the plaintiff. Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020). Thus, because the dockets from the 2015, 2016, 2018, and 2020 cases are matters of public record, the Court may consider these dockets on the instant Motion to Dismiss the Complaint.

provided in Section 3.2(d) of the CVR Agreement.  Id. at ¶ 12-13; 2016 Case Docket, Doc. No. 96 at ¶ 16.  When Holders attempted to invoke the expert review process, Defendant refused to participate, asserting that Holders could not invoke the expert valuation process since they failed to first demand that Defendant pay them the amount of negative $7 million as required by Section 3.2(c) and (d).  Markel Corp. v. Frederick Daley III, Holder Representative, Case No. 11836-VCL (Del. Ch. 2015); (Doc. No. 1 at ¶ 20.)

In 2015, to prevent Holders from pursuing the valuation process under Section 3.2(d) of the CVR Agreement, Defendant sued them in Delaware Chancery Court.  (Doc. No. 1 at ¶ 21.) But later that year, Defendant and Holders, through former Holder Representative Frederick M. Daley III, agreed to a settlement in which Holders agreed to withdraw their request to begin the valuation process, and further agreed that they would not at any time pursue expert valuation of the Five-Year Adjustment Statement nor demand prepayment.[3]  (Id.)

### 3.    2016 Case

In 2016, Defendant's annual adjustment statement valuing the CVRs reflected a value far below Holders' estimation.  (Doc. No. 1 at ¶ 22.)  To confirm the CVR value, Holders requested additional documents to determine if Defendant's calculations were correct.  2016 Case Docket, Doc. No. 97 at ¶ 16.  Defendant, however, did not provide the requested documents, so Holders served on Defendant a notice to cure default.  2016 Case Docket, Doc. No. 54 at ¶ 21; 2016 Case Docket, Doc. No. 1 at ¶ 35.  On September 15, 2016, when Defendant did not respond to the notice to cure default, Holders filed a suit against Defendant in the United States District Court for the District of Delaware, alleging various common-law claims including breach of contract, fraud,

---

[3]    Following the settlement, Thomas Yeransian was selected as Daley's successor Holder Representative.  (Doc. No. 1 at ¶ 22.)

negligent misrepresentation, and breach of fiduciary duty. (Doc. No. 1 at ¶ 22); <u>2016 Case Docket</u>, Doc. No. 54. Holders brought the case in Delaware pursuant to Section 11.6(b) of the CVR Agreement.[4] <u>2016 Case Docket</u>, Doc. No. 54 at ¶ 4.

In filing the 2016 case, Holders sought to avoid the Section 3.2(d) independent expert valuation process. <u>2016 Case Docket</u>, Doc. No. 54 at ¶ 87. In the 2016 Complaint's request for relief, Holders asked for "an order allowing recovery of costs, . . . and recovery of attorney's fees and expenses as provided by Section ; [sic][.]"[5] <u>2016 Case Docket</u>, Doc. No. 54 at 20. Additionally, Holders asked for "[m]onetary damages in an amount to be determined at trial, but not less than 47.3 million" as well as "[m]onetary damages in the form of an award of exemplary or punitive damages to be determined in relation to the value of Markel as a whole[.]" <u>Id.</u>

Defendant then moved to stay the litigation and invoke the expert valuation/arbitration provided for in Section 3.2 of the CVR Agreement. (<u>Id.</u>) While Defendant's Motion to Stay was pending, Defendant reissued all its prior adjustment statements due to changes in its actuarial practices. (<u>Id.</u> at ¶ 23.) The revised adjustment statements increased Defendant's stated CVR valuation. (<u>Id.</u>)

---

[4] Section 11.6(b) says:

> Each of the parties hereto hereby irrevocably and unconditionally submit, for itself and its property, to the exclusive jurisdiction of any Delaware court, or Federal Court of the United States of America sitting in Delaware, and any appellate court from any thereof, in any action or Proceeding arising out of or relating to this Agreement.

(Doc. No. 1-1 at 26-27.) This Section applies to the 2018 Case, the 2020 Case, and this case.

[5] The 2016 Complaint said "Section ;" but didn't specify which section provided for its request for attorney's fees and expenses. <u>2016 Case Docket</u>, Doc. No. 54 at 20.

On July 31, 2017, the court granted Defendant's motion and stayed the litigation, directing Defendant and Holders to select experts to conduct the limited arbitration as set out in Section 3.2(d) of the CVR Agreement to resolve CVR related disputes.  (Id. at ¶ 25.)  On August 14, 2017, Holders sought reconsideration of the order compelling the valuation process, which the court denied on October 12, 2018.  2016 Case Docket, Doc. No. 68; 2016 Case Docket, Doc. No. 112 at 2.

### 4.    2018 Case

On November 9, 2018, while the expert valuation process was ongoing, Holders filed another case against Defendant in the United States District Court for the District of Delaware, arising from the same facts and circumstances but asserting new defaults:  (1) Defendant failed to timely provide five-year adjustment statement; and (2) Defendant failed to provide access to books and records.  See Yeransian v. Markel Corporation, Case No. 1:18-cv-01777 [hereinafter, the "2018 Case Docket"], Doc. No. 1 at 8-18.

As relief, Holders asked to be awarded attorney's fees pursuant to Section 8.6(b) of the CVR Agreement.  Id. at 18.  In addition, Holders requested monetary damages in an amount not less than the Initial Principal Amount of $47.3 million plus interest and default interest from the date of the first default; as well as monetary damages in the form of an award of exemplary or punitive damages to be determined in relation to the value of Defendant as a whole.  Id.

In response, Defendant – again – moved to stay the case pending Section 3.2(d)'s expert-valuation process.  2018 Case Docket, Doc. No. 6 & 12.  On December 3, 2018, the court granted Defendant's motion, ordering Holders to provide the court and Defendant with the identity of actuarial firms to permit Holders to participate in the selection of an Independent Actuary and Independent Claims Expert pursuant to Section 3.2(d).  2016 Case Docket, Doc. No. 114.

9

### 5.    2020 Case

On June 5, 2020, while the expert-valuation process mandated by the court in the 2016 and 2018 cases remained ongoing, Holders filed another action against Defendant. See Yeransian v. Markel Corporation, Case No. 1:20-cv-00762 [hereinafter, the "2020 Case Docket"], Doc. No. 20 at 55. In the action, Holders again sought "an award to the Holders of their costs . . . and recovery of attorney's fees and expenses as provided by Section 8.6(b) of the CVR Agreement." 2020 Case Docket, Doc. No. 20 at 55. Holders also requested (1) an award of monetary damages to Holders in an amount not less than the initial principal amount of $47.3 million; (2) an award of monetary damages to Holders in the form of an award of exemplary or punitive damages to be determined in relation to the value of Defendant as a whole; and (3) an award of monetary damages to Holders sufficient to pay all consequential damages caused by Defendant's actions in an amount to be proved at trial. Id. at 55-56.

On June 25, 2020, Defendant's filed a Motion to Stay Holders' action pending the valuation process, and on March 16, 2021, the court granted Defendant's motion. 2020 Case Docket, Doc. No. 8; 2020 Case Docket, Doc. No. 34.

### 6.    Experts' CVR Valuation Report

Because of the cumbersome evaluation process required by Section 3.2(d) of the CVR Agreement and the amount of data involved, the experts' valuation report was not completed until September 20, 2021. (Doc. No. 1 at ¶ 26.) The independent valuation calculated that the final Adjusted Principal Amount of the CVRs was $22,429,120.00, which was a $13,581,360.00 increase from Defendant's final estimated value of $8,847,760.00. (Id.) On the same day the expert valuation report was submitted, Defendant paid the resulting Payment Amount without objection from Holders. 2016 Case Docket, Doc. No. 154; (Doc. No. 1 at ¶ 27.) While the payment

was made, litigation continued with Holders' arguing that Defendant's defaults under the CVR Agreement warranted full payment of the $47.3 million Initial Principal Amount.  (Id. at ¶ 28.)

### 7.    Consolidation and Resolution of Prior Consolidated Cases

On September 21, 2021, Defendant filed a Motion to Consolidate Cases, and on November 22, 2021, the court granted it, consolidating the 2018 and 2020 cases into the 2016 case (collectively, the "Prior Consolidated Cases").  2016 Case Docket, Doc. Nos. 149, 173.

On September 21, 2021, Defendant also filed a Motion to Dismiss for Failure to State a Claim or for Summary Judgment as to all claims asserted by Holders in each of the cases.  2016 Case Docket, Doc. No. 151.  On June 8, 2023, the court granted Defendant's Motion to Dismiss or for Summary Judgment, disposing of all Holders' claims and requests for relief.  2016 Case Docket, Doc. No. 183.  On July 7, 2023, Holders appealed the court's dismissal order, and on July 3, 2024, the Third Circuit affirmed.  2016 Case Docket, July 10, 2023, Notice of Appeal; 2016 Case Docket, Doc. No. 194.

### 8.    Confirmation of Arbitration Award Order

On December 20, 2021, the deadline for a motion to vacate, modify, or correct the valuation/arbitration award expired without Defendant filing a motion.  2016 Case Docket, Doc. No. 189 at 2.  On January 20, 2022, Holders filed a Motion to Confirm Arbitration award pursuant to 9 U.S.C.  § 9.[6]  2016 Case Docket, Doc. No. 175.  Defendant opposed Holders' motion because it had already paid the award, alleging that payment mooted the need for confirmation.  2016 Case Docket, Doc. No. 178.  On July 18, 2023, the court confirmed the experts' award.  2016 Case Docket, Doc. No. 189 at 2.

---

[6]  9 U.S.C. § 9, which governs arbitration awards, states in pertinent part that "at any time within one year after the [arbitration] award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."

### 9.    Demand for Attorney's Fees

On October 16, 2023, 90 days after the arbitration award was confirmed, Holders demanded payment from Defendant of $3,871,554.97 in attorney's fees and expenses.[7]  (Doc. No. 1 at ¶ 35-36.)  Defendant refused to pay this demand.  (Id.)  No further action was taken by Holders on the demand until the instant suit was filed in this case.

### B.    Procedural Background

On February 18, 2025, Plaintiff Thomas Yeransian, acting as Holders' representative, filed the Complaint in this Court against Defendant, alleging a breach of contract.  (See Doc. No. 1.)  In the Complaint, Holders assert that Defendant's refusal to reimburse Holders for their attorney's fees breached Section 8.6(b) of the CVR Agreement, which is quoted supra.  (Id. at 10.)  As relief, Holders seek payment of the $3,871,554.97 of attorney's fees and expenses.  (Id.)

On April 9, 2025, Defendant filed a Motion to Dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 12.)  In the Motion, Defendant argues that res judicata, claim splitting, and Federal Rule of Civil Procedure 54(d) covering attorney's fees bar Holders' claims.  (Doc. No. 13 at 14-18.)

On April 22, 2025, Holders filed a Response in Opposition to Defendant's Motion to Dismiss.  (Doc. No. 14.)  In their response, Holders argue that res judicata does not bar their claims because (1) the issue in this case is not identical to the issues decided in Prior Consolidated Cases; and (2) Section 8.6(b) of the CVR Agreement could not have been fully litigated in the Prior Consolidated Cases because the issue under Section 8.6(b) was not ripe for adjudication.  (Id. at 15-16.)  Holders also argue that claim splitting applies only if the second suit is brought while the first is still pending, and because the Prior Consolidated Cases are now closed and no longer

---

[7]    The parties do not specify whether Holders' demand on Defendant for the $3,871,554.97 in attorney's fees and expenses was made by letter, email, or another method.

pending, claim splitting does not apply.  (<u>Id.</u> at 16.)  Finally, Holders contend that Rule 54(d) does not apply here because it does not apply to fee requests which constitute damages for breach of contract.  (<u>Id.</u> at 13-14.)

On April 29, 2025, Defendant filed a Reply in Support of its Motion to Dismiss the Complaint in which Defendant advances several arguments in support of dismissal.  (Doc. No. 19.) First, Defendant re-affirms that Holders' claims are barred by <u>res judicata</u>.  (<u>Id.</u> at 8-12.)  Defendant emphasizes that the allegations and prayer for relief in the Prior Cases are truly identical to those in the instant action, and that Holders had a full and fair opportunity to litigate their attorney's fee claims because they repeatedly prayed for recovery pursuant to Section 8.6(b) in the Prior Cases. (<u>Id.</u> at 10.)  Further, Defendant asserts that claim preclusion applies because it applies equally to overlapping or repetitive actions.  (<u>Id.</u> at 11.)  Defendant also argues that attorney's fees, whether statutory, contractual, or otherwise, are routinely pursued by motion under Rule 54(d), and they should have been pursued under this Rule in the Prior Consolidated Cases or the right to fees is waived.  (<u>Id.</u> at 8.)  Defendant also argues that Holders' claim fails on the merits because Section 8.6(b) of the CVR Agreement only requires Defendant to pay Holders' attorney's fees and expenses in cases where there is "a final determination . . . in favor of the Holders," but Holders have no final determinations in their favor from the Prior Consolidated Cases because the motion to confirm was purely ministerial and unnecessary.  (<u>Id.</u> at 13.)  Finally, Defendant maintains that Holders did not establish or even argue that Delaware substantive law requires attorney's fees to be proven at trial as an element of damages.  (Doc. No. 19 at 8.)

On June 17, 2025, the Court held a hearing on the Motion.  Defendant's Motion to Dismiss the Complaint (Doc. No. 12) is now ripe for adjudication.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

14

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint [,] and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Courts also consider documents "integral" to a complaint, even if not appended to it by the plaintiff, may nevertheless be considered by the court on a motion to dismiss. Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020).

## IV.    ANALYSIS

As mentioned, Defendant makes several arguments in seeking dismissal of Holders' lawsuit. (Doc. No. 13.) Specifically, Defendant asserts Holders' breach of contract claim is barred by res judicata, claim splitting, and by Federal Rule of Civil Procedure 54. (Doc. No. 13 at 3-4.) Because the Court finds Holders' breach of contract claim is waived under Federal Rule of Civil Procedure 54(d)(2) and barred by res judicata, it need not address whether it is also barred by claim splitting.

### A.    Plaintiff's Request for Fees Is Waived Under Federal Rule of Civil Procedure 54(d)(2)

As noted above, in the instant case, Holders allege that Defendant breached the CVR Agreement by not reimbursing Holders for the fees and expenses they incurred in the Prior Consolidated Cases pursuant to Section 8.6(b) of the Agreement. But because Section 8.6(b) is a fee shifting clause, Holders' request for fees and expenses should have been brought by motion filed no later than 14 days after entry of judgment in the Prior Consolidated Cases under Federal Rule of Civil Procedure 54(d). Rule 54(d) states in pertinent part:

> (2) Attorney's Fees.
>
> > (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
> >
> > (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
> >
> > > (i) be filed no later than 14 days after the entry of judgment;
> > >
> > > (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> > >
> > > (iii) state the amount sought or provide a fair estimate of it; and
> > >
> > > (iv) disclose, if the court so orders, the terms of any agreement about fees for services for which the claim is made.

Fed. R. Civ. P. 54(d)(2). Critically, "Rule 54(d)(2) applies 'regardless of the statutory, contractual, or equitable basis of the request for fees.'" Ray Haluch Gravel Co. v. Cent. Pension Fund of Intern. Union of Operating Eng'rs & Participating Emps., 571 U.S. 177, 188 (2014) (quoting 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 18.01[1] [c], pp. 18–7 to 18–8 (2013)).

### 1.     Holders' Request For Fees and Expenses Should Have Been Brought Under Rule 54

As an initial matter, the instant case is merely a request for an award of attorney's fees arising under a private agreement between the parties.  A private agreement does not preclude the request from falling under Rule 54(d).  As noted, Rule 54(d) requires claims for attorney's fees and related nontaxable expenses to be made by motion, unless substantive law requires those fees to be proven at trial as an element of damages.  Fed. R. Civ. P. 54(d)(2)(A).

Because the Prior Consolidated Cases were in federal court through diversity of citizenship jurisdiction and because the CVR Agreement expressly provided that it is governed by the law of Delaware, the substantive law that applies here is Delaware state law.  (See Doc. No. 1-1 at 30); see also 6 James Wm Moore et al., Moore's Federal Practice §54.78[1] (3d ed. 2000) ("A federal court sitting in diversity applies the law of the forum state regarding an award of attorney's fees.") But since Delaware law does not require attorney's fees to be proved as an element of damages at trial and because Section 8.6(b) is a fee shifting clause rather than a damages clause, Holders' request for fees and expenses should have been brought in a Rule 54(d) motion.

First, while some states require attorney's fees to be proven at trial as an element of damages, Delaware is not one of those states.  Under Delaware law, requests for attorney's fees may be brought by a Rule 54(d) motion.  See Pabban Dev., Inc. v. Sarl, 673 F. App'x 612, 615 (9th Cir. 2016) (applying Delaware state law to a Rule 54(d) motion for attorney's fees brought under a fee-shifting provision and noting that the plaintiff "did not demonstrate that Delaware law—the substantive law governing the parties' contract—requires attorney's fees awarded pursuant to a fee-shifting provision of a contract to be proven at trial as an element of damages" and that Delaware "case law suggests that attorney's fees awarded pursuant to a fee-shifting provision of a contract may be proven in a post-trial motion for fees, separate and apart from damages proven at

trial"); <u>see also</u> <u>SIGA Techs., Inc. v. PharmAthene, Inc.</u>, 67 A.3d 330, 353 (Del. 2013) ("Delaware law dictates that in fee shifting cases, a judge determines whether the fees requested are reasonable.") (citing <u>Mahani v. Edix Media Grp., Inc</u>, 935 A.2d 242 (Del. 2007)).

Here, a Rule 54(d) motion was the correct procedural vehicle for Holders to pursue their request for attorney's fees.  Holders do not point to any substantive law showing that Delaware courts require attorney's fees to be proved as an element of damages at trial.  (<u>See</u> Doc. No. 14 at 14 (citing a case applying New Jersey law for the proposition that Holders' request for attorney's fees must be proved at trial as an element of damages).)  Also, because Delaware case law suggests requests for attorney's fees brought under fee-shifting provisions may be brought in a post-trial motion, Holders' argument that Rule 54(d) has a specific prohibition against enforcing contractual fee claims is incorrect.  Thus, because Delaware law suggests attorney's fees are not required to be proved as an element of damages at trial, Holders' request for attorney's fees should have been brought in a Rule 54(d) motion.

Second, the language of Section 8.6(b) reveals it is a fee shifting clause, rather than a damages provision.  Under Delaware law, a "fee-shifting provision must be a clear and unequivocal agreement in connection with a dispute between parties involving a failure to fulfill obligations under the contract."  <u>SARN Energy LLC v. Tatra Defence Vehicle A.S.</u>, No. N17C-06-355, 2019 WL 6525256, at *1 (Del. Super. Ct. Oct. 31, 2019).  "There must be 'specific language' such as reference to a 'prevailing party,' considered by Delaware courts as 'a hallmark term of fee-shifting provisions.'"  <u>Donnelly v. PhoPharma Group Topco, LLC</u>, No. 21-894, 2023 WL 5528613, at *4 (D. Del. Aug. 28, 2023).  In addition, a contractual provision may be characterized as a fee-shifting provision when read in the context of the agreement as a whole.  <u>See</u> <u>Murfey v. WHC Ventures,</u>

18

LLC, No. 2020-0704, 2022 WL 214741, at *2 (Del. Ch. Jan. 25, 2022) ("Reading the agreement as a whole does not support characterizing Section 4.3.1 as a fee-shifting provision.")

In this case, the specific language of Section 8.6(b) reveals a clear and unequivocal agreement between the parties to shift the payment of fees and expenses from Holders to Defendant. Specifically, Section 8.6(b) states in pertinent part as follows:

> In the event that a court of competent jurisdiction makes a final determination following expiration of all applicable appeals periods related thereto in favor of the Holders in any dispute related to the enforcement of the provisions contained in this Agreement or the Merger Agreement, Parent shall reimburse the Holder Representative for all documented fees and expenses that were reasonably incurred by the Holder Representative in connection with such dispute . . . .

(Doc. No. 1-1 at 26 (emphasis added).) Put differently, this provision shifts the payment of fees and expenses incurred by the Holder Representative in connection with a dispute relating to the enforcement of the CVR Agreement to Defendant when Holders are the prevailing party in the dispute. While Section 8.6(b) does not use the specific language "prevailing party," its language requiring the dispute to be resolved "in favor of Holders" has the same meaning. See Donnelly, 2023 WL 5528613, at *4 ("We can find the parties agreed to clear and unequivocal fee-shifting when the term 'prevailing 'party' or 'successful party' is used in the parties' contract.")

Moreover, reading the CVR Agreement as a whole makes clear that Section 8.6(b) was intended to be a fee-shifting provision. For example, in Section 8.6(a), the CVR Agreement states that Holders themselves bear the cost of "any administrative or other expenses incurred by the Holder Representative in connection with performing its duties under this Agreement and the Merger Agreement." (Doc. No. 1-1 at 25.) However, Section 8.6(b) shifts these costs to Defendant where, as noted above, "a court of competent jurisdiction makes a final determination following expiration of all applicable appeals periods related thereto in favor of the Holders in any dispute

19

related to the enforcement of the provisions contained in this Agreement or in the Merger Agreement." (<u>Id.</u> at 26.)  Thus, Section 8.6(b) is a fee shifting provision.

Additionally, Section 8.6(b) is not a damages provision because, as recognized by the Third Circuit, "attorney's fees are not properly viewed as a form of consequential damages – or as damages at all." <u>Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc.</u>, 453 F. App'x 174, 181 (3d Cir. 2011).  The United States Supreme Court came to the same conclusion, stating:

> [A]wards of attorney's fees do not remedy the injury giving rise to the action, are often available to the party defending the action, and were regarded at common law as an element of 'costs' awarded to a prevailing party, which are generally not treated as part of the merits judgment.

<u>Ray Haluch Gravel Co.</u>, 571 U.S. at 184.

Notably, Holders themselves do not even view Section 8.6(b) as a damages provision, as shown by the Complaints in the Prior Consolidated Cases.  For example, in 2016, Holders asked for specific damages but also separately asked for "an order allowing recovery of costs, . . . and recovery of attorney's fees and expenses as provided by Section[.]" <u>2016 Case Docket</u>, Doc. No. 54 at 20.  In 2018, Holders, again, asked for specific damages, and again separately asked to be awarded their costs of attorney's fees and expenses as provided by Section 8.6(b). <u>2018 Case Docket</u>, Doc. No. 1 at 18.  In 2020, Holders once again sought specific damages to be awarded to them, as well as damages to be proved at trial, and again separately asked to be awarded attorney's fee pursuant to Section 8.6(b). <u>2020 Case Docket</u>, Doc. No. 20 at 55-56.  Thus, if Holders separately asked for damages and attorney's fees in the Prior Consolidated Cases, they did not view their request for damages as encompassing an award of attorney's fees and expenses under Section 8.6(b).

In addition, reading Section 8.6 of the CVR Agreement as a whole, the Section does not contemplate an award of damages.  <u>See</u> <u>Engelhard Corp. v. N.L.R.B</u>, 437 F.3d 374, 381 (3d Cir.

2006) (recognizing that a well-established principle of contract construction is "to read, if possible, all provisions of a contract together as a harmonious whole").  Read as a whole, Section 8.6 is a clause to determine how expenses arising from the Holder Representative's performance of duties under the CVR Agreement will be apportioned.  Specifically, Section 8.6(a) establishes that Holders pay for their own expenses, unless a court renders a final determination in favor of Holders in a dispute related to the enforcement of the CVR Agreement, in which case Section 8.6(b) dictates that the fees and expenses incurred by Holders during this dispute are to be reimbursed by Defendant.  (Doc. No. 1-1 at 25-26.)  If this section was a damages provision, as Holders argue, Section 8.6(a) could have stated this notion directly.  Thus, read as a whole, Section 8.6 is not a damages provision and was not intended to be.

Therefore, because no substantive Delaware law required Holders' request for fees and expenses to be proved at trial as an element of damages and because Section 8.6(b) is a fee shifting provision rather than a damages provision, if Holders wanted be awarded their attorney's fees and related nontaxable expenses, they should have filed a motion pursuant to Rule 54(d)(2)(A) within 14 days of judgment in the Prior Consolidated Cases.  They did not do so and instead waited about one and a half years to file this case and make the same claim.

### 2.    Holders Waived Their Right to the Requested Fees and Expenses by Failing to Timely Move Under Rule 54

Even if Holders had filed the instant request for fees and expenses as a Rule 54(d) motion, Holders waived their right to fees and expenses by failing to file the request within a reasonable time.  As noted above, Rule 54(d)(2)(B) requires motions for attorney's fees to be "filed no later than 14 days after entry of judgment."  Fed. R. Civ. P. 54(d)(2)(B).  While this 14-day requirement is not jurisdictional, it "should not be lightly disregarded."  Sokoloff v. Gen. Nutrition Cos., Inc.,

No. 00-641, 2001 WL 536072, at *3 (D.N.J. May 21, 2001).  According to the advisory committee

notes to the 1993 amendment, the purpose of Rule 54(d)(2)(B)'s 14-day requirement is as follows:

> One purpose of this provision is to assure that the opposing party is informed of the
> claim before the time for appeal has elapsed . . . Prompt filing affords an opportunity
> for the court to resolve fee disputes shortly after the trial, while the services
> performed are freshly in mind. It also enables the court in appropriate circumstances
> to make a ruling on a fee request in time for any appellate review over fees to
> proceed at the same time as review on the merits of the case.

Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment.

Unless the court or a statue specifies a different deadline, a party must file a fee motion no

later than 14 days after entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).  The failure to file a

timely fee motion can waive the party's right to seek attorney's fees.  Stephen Gensler, Federal

Rules of Civil Procedure, Rules and Commentary, § 54:53 (2d ed. 2025); see also Brown &

Pipkins, LLC v. Serv. Employees Int'l Union, 846 F.3d 716, 730-31 (4th Cir. 2014) (noting that a

failure to file a timely fee motion waived the party's claim for fees).  However, if no motion for

fees is filed within 14 days, the court may extend the filing time when the failure to file was "the

result of excusable neglect."  Fed. R. Civ. P. 6(b)(2).

Here, because Delaware law does not provide a different deadline and because Holders

failed to file their request for fees and expenses under Section 8.6(b) within 14 days of entry of

judgment, Holders waived their right to request such fees and expenses.  Holders submit that a

judgment was entered in their favor in the Prior Consolidated Cases on July 18, 2023, when the

United States District Court for the District of Delaware confirmed the expert's arbitration award,

thus triggering Holders' ability to request fees and expenses from Defendant under Section 8.6(b).

(Doc. No. 1 at 9.)  A confirmation of an arbitration award pursuant to 9 U.S.C. § 9 is a final

judgment.  See Teamsters Local 177 v. United Parcel Serv., 966 F.3d 245, 248 (3d Cir. 2020)

("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is

already a final arbitration award a judgment of the court. Confirmation is the process through which a party to arbitration completes the award process under the [Federal Arbitration Act], as the award becomes a final and enforceable action.")

Thus, pursuant to Rule 54(d)(2)(B), starting on July 18, 2023, Holders had 14 days to file a motion for attorney's fees pursuant to Section 8.6(b) of the CVR Agreement. Holders chose not to do so. Instead, they waited until October 16, 2023, 90 days after the confirmation order was issued, to demand fees and expenses from Defendant. And after Defendant denied their demand, Holders still waited until February 17, 2025 to file the instant case requesting these fees and expenses, which was 16 months after their demand on Defendant and 19 months after entry of the order confirming the arbitration award. Therefore, because over 19 months had passed since entry of the judgment that Holders claimed triggered their right to pursue Section 8.6(b), Holders waived their rights to seek attorney's fees.

Moreover, even if Holders had styled the instant request for fees and expenses as a Rule 54(d) motion rather than as a new claim, the approximately 19-month delay in the request is unreasonable and cannot be deemed excusable neglect. Allowing an extension of about 19 months goes against the rationale for establishing Rule 54(d)(2)(B). See Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. For example, rather than Defendant being informed of the claim for fees and expenses before the time for appeal had lapsed, it was instead informed of the claim about 19 months after entry of judgment. In addition, far from Holders promptly filing the request to afford the court an opportunity to resolve the dispute over fees and expenses while "the services performed are freshly in mind," Holders not only filed the request about 19 months later but also filed the request before the instant Court rather than before the judge who had presided over the Prior Consolidated Cases.

As such, because Holders' request for fees and expenses was filed an unreasonable amount of time after entry of judgment, the request would be untimely even if Holders had filed the request here as a Rule 54(d) motion. See Thomas v. Board of Educ, Unified School Dist. No 501, 177 F.R.D. 488, 488-89 (D. Kan. 1997) (denying as untimely a Rule 54(d) motion that was filed 30 days after entry of judgment); Horne v. City of Hamilton, OH, No. 98-3601, 1999 WL 313902, at *1-2 (6th Cir. May 3, 1999) (denying as untimely a Rule 54(d) motion that was filed 2 months after entry of judgment); Adams v. Rivera, 13 F. Supp. 2d 550, 551-52 (S.D.N.Y. 1998) (denying as untimely a Rule 54(d) motion that was filed 118 days after entry of judgment).

In sum, Rule 54 was the exclusive vehicle for recovering the fees and expenses Holders incurred in the Prior Consolidated Cases. Holders' failure to file a Rule 54 motion within either 14 days of entry of judgment or within a reasonable time of entry of judgment waived their right to seek attorney's fees. Their current breach of contract claim is simply a repurposed fee request from the Prior Consolidated Cases and this is not allowed. Holders' neglect to use the procedural tool available to them should not be countenanced.

### B.    Res Judicata Bars Holders' Claim

In addition, the claim in the present case is barred by res judicata. Res judicata, also known as claim preclusion, bars a party from initiating a subsequent suit against the same adversary based on the same cause of action as a prior suit. Duhaney v. Att'y Gen. of U.S., 621 F.3d 340, 347 (3d Cir. 2010). The purpose of res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). In applying this doctrine, courts apply federal principles of res judicata with respect to prior decisions rendered by a federal court and apply state principles of res judicata with respect to prior decisions rendered by a state court.

See In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997). Here, because the Prior Consolidated Cases are federal court cases, the Court will apply federal principles of res judicata.[8]

Under the federal doctrine of res judicata, a party must establish three elements: (1) a final judgment on the merits in a prior suit, involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. Marmon Coal Co. v. Office of Workers' Compensation Programs, 726 F.3d 387, 394 (3d Cir. 2013).

### 1.    Elements One and Two of Res Judicata are Met

Res judicata elements one and two need not detain the Court for long. First, neither party disputes that there was a final judgment on the merits in the Prior Consolidated Cases. On June 8, 2023, the court granted the Motion to Dismiss or for Summary Judgment on the merits in favor of Defendant on all pending claims in the Prior Consolidated Cases. See 2016 Case Docket, Doc. No. 183 at 18. This order was a final, binding adjudication on the merits. See Ray Haluch Gravel Co., 571 U.S. at 183 ("[A] 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.")

Second, neither party argues that the prior and subsequent suits involve the same parties. (Doc. No. 1 at 1); 2016 Case Docket, Doc. No. 54 at 1. Holders sued Defendant in the Prior Consolidated Cases and Holders are suing Defendant here. Thus, elements one and two of the federal res judicata test are met.

---

[8]    Courts apply federal principles of res judicata where the prior decision at issue was rendered by a federal court. Because the prior decisions at issue in this case were rendered by the United States District Court for the District of Delaware, the Court will apply the federal doctrine of res judicata. In their respective briefs on the instant Motion to Dismiss the Complaint, both Holders and Defendant mistakenly apply the Delaware doctrine of res judicata. (See Doc. Nos. 12, 14.)

### 2.    Element Three of <u>Res</u> <u>Judicata</u> is Met

The third <u>res judicata</u> element requires more analysis but is also met.  As noted above, the

third element asks whether the subsequent suit is based on the same cause of action as the previous

suit.  Courts take a broad view of what constitutes the same cause of action and <u>res judicata</u>

generally is thought to turn on the essential similarity of the underlying events giving rise to the

various legal claims.  <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 277 (3d Cir. 2014).

<u>Res judicata</u> bars a claim that "arises from the same set of facts as a claim adjudicated on

the merits in the earlier litigation."  <u>Id.</u>  Critically, it also bars claims that could have been brought

in the previous action.  <u>In re Mullarkey</u>, 536 F.3d, 215, 225 (3d Cir. 2008).  "A claim extinguished

by <u>res judicata</u> includes all rights of the plaintiff to remedies against the defendant with respect to

all or any part of the transaction, or series of connected transactions, out of which the action arose."

<u>Blunt</u>, 767 F.3d at 277.  As noted by the Restatement (Second) of Judgments:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's
> claim pursuant to the rules of merger or bar, <u>the claim extinguished includes all</u>
> <u>rights of the plaintiff to remedies against the defendant with respect to all or any</u>
> <u>part of the transaction, or series of connected transactions, out of which the action</u>
> <u>arose.</u>

Restatement of the Law – Judgments §24 (emphasis added).  "[T]he standard is whether the 'claim

was sufficiently related to the claims that were asserted in the first proceeding that it <u>should have</u>

been asserted in that proceeding.'"  <u>Digene Corp. v. Ventana Medical Systems, Inc.</u>, 511 F.Supp.2d

407, 412 (D. Del. 2007) (emphasis in original).

Here, because Holders could have and should have brought their claim for fees and

expenses in the Prior Consolidated Cases, the third element of <u>res judicata</u> is satisfied.  In the

instant case, Holders contend they are entitled to the fees and expenses they incurred throughout

litigation in the Prior Consolidated Cases pursuant to Section 8.6(b) of the CVR Agreement

because the Prior Consolidated Cases concluded in a final judgment in favor of Holders, namely

the court's order confirming the arbitration award.  But notably, in each of the Complaints filed in the Prior Consolidated Cases, Holders specifically requested as a remedy the payment of attorney's fees pursuant to Section 8.6(b).[9]  Thus, as Defendant points out, "[n]ot only could [Holders'] attorney's fee claim 'have been properly presented in the prior action,' but it actually was presented in the Prior [Consolidated Cases]."  (Doc. No. 13 at 17 (emphasis in original).)  And as noted above, if Holders believed they were entitled to fees and expenses under Section 8.6(b) when the court entered the order confirming the arbitration award, as they now claim, they could have and should have pursued these fees and expenses by motion within 14 days of entry of judgment under Federal Rule of Civil Procedure 54(d)(2).

Therefore, because Holders' current request for fees and expenses arises from the same transaction as the Prior Consolidated Cases, and because they had both the opportunity and obligation to raise that request through a timely Rule 54 motion following the judgment confirming the arbitration award, their claim is now barred by res judicata.  Res judicata does not permit parties to withhold available claims or remedies only to litigate them later.  Holders admit that the conditions required to trigger Section 8.6(b) were satisfied in the Prior Consolidated Cases, and they could have sought relief at that time.  Their failure to do so extinguished their right to pursue this claim now.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint (Doc. No. 12) will be granted.  An appropriate Order follows.

---

[9]   As noted above, the 2016 Complaint requested "an order allowing recovery of costs . . . and recovery of attorney's fees and expenses as provided by Section ;[sic]" but seemed to mistakenly leave out the specific section on which its request for fees and expenses was premised.  See 2016 Case Docket, Doc. No. 54 at 20.